UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MICHAEL LEE LEONARD,

            Petitioner,

    v.

R.L. GOWER,

            Respondent.

No.  2:15-cv-2097 JAM KJN P

FINDINGS & RECOMMENDATIONS

I.  Introduction

      Petitioner is a state prisoner, proceeding without counsel, with an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges his 2013 conviction.  In his amended petition, petitioner raises two claims that his conviction violates the Constitution. Respondent filed an answer; petitioner did not file a traverse.  After careful review of the record, this court concludes that the petition should be denied.

II.  Procedural History

      1.  A jury found petitioner guilty of battery with serious bodily injury (count 1), willfully resisting, delaying or obstructing a police officer, a misdemeanor (count 2), and assault by means of force likely to produce great bodily injury (count 3).  In connection with counts 1 and 3, the jury found petitioner personally inflicted great bodily injury.  In bifurcated proceedings, petitioner

////

1

admitted a strike prior (1995 robbery), a prior felony conviction , and four prior prison terms.  On July 22, 2013, petitioner was sentenced to 20 years in state prison.

2.  Petitioner appealed the conviction to the California Court of Appeal, Third Appellate District.  The Court of Appeal affirmed the conviction on October 24, 2014.

3.  On November 25, 2014, petitioner filed a petition for review in the California Supreme Court.  Petitioner raised two claims:  (1) the trial court abused its discretion and violated his Fourteenth Amendment right to due process and a fair trial by allowing him to be impeached by six prior misdemeanor convictions and six prior felony convictions, and trial counsel's assistance was ineffective for failing to object; and (2) trial counsel was ineffective for failing to present evidence through cross-examination of the victim and/or a defense expert of the meaning and extent of the victim's impairment.  On January 14, 2015, the California Supreme Court denied review.

4.  Petitioner filed the instant amended petition on April 21, 2016.  (ECF No. 21.)

III.  Facts

In its unpublished memorandum and opinion affirming petitioner's judgment of conviction on appeal, the California Court of Appeal for the Third Appellate District provided the following factual summary:

> About 2:00 p.m. on February 5, 2013, at the corner of 10th and G Streets in Marysville, defendant punched 51-year-old Bradley Kirkegaard, rendering him unconscious. Defendant then fled the scene. An officer saw defendant a few blocks from the scene and ordered him to stop several times. Defendant fled from the officer and jumped over a fence. Officers found defendant hiding in a locked fenced yard.
>
> The victim was transported to the hospital. He suffered a broken nose and facial lacerations which required stitches.
>
> At trial, the victim testified he had never seen defendant before, did not know who he was, and did not converse with him. The victim felt the blow without warning. The victim admitted he had been drinking, having had four or five beers that day, but claimed he was not drunk. His blood-alcohol content at the hospital was 0.18 percent.
>
> Two eyewitnesses who saw defendant punch the victim testified at trial. John Wilhelm was a passenger in a car driven by his spouse Jill Wilhelm.  [FN2] They were stopped at a light on 10th Street

preparing to turn left onto G Street. They were behind three cars. According to the officer who responded to the scene, the Wilhelm's location was about 120 feet from the scene. John saw defendant "sucker punch" the victim without "rhyme or reason." On cross-examination, John testified it looked like the two were leaning on a light pole and could have been talking.

[FN2: We will use their first names to avoid confusion; no disrespect is intended.]

Jill testified that as she was driving that day, John exclaimed, "That guy just sucker punched that other guy." Jill did not see the blow but called 911 because she saw defendant fleeing from the scene.

Wade Horton saw the punch as well. Horton was on 10th Street waiting for the light to turn green so he could turn left onto G Street. He was a couple of car lengths away, about 80 feet, from the scene. Horton observed defendant standing to the right and slightly behind the victim, "bouncing left to right, acting kind of agitated" before he hit the victim. Horton did not see the two conversing before the punch. Horton testified defendant "sucker punch[ed]" the victim who was completely defenseless. Defendant threw an "overhand right," hitting the victim square in the face.

The 44-year-old defendant testified. Defendant claimed the victim, who was drunk and smelled like alcohol, leaned or lunged into defendant, punching him "in the nuts." Defendant admitted hitting the victim, claiming he did so in self-defense.

Two character witnesses testified for defendant. Dianna Burke-Knapp had seen defendant casually a couple of times a year for nine years and about once a week in the previous eight months. She opined that defendant was a "gentle spirit and very kind" who had never been violent in her presence. She believed he had to have been provoked in the current incident. He had written to her to explain his version of the incident. She had seen him provoked previously where he did not respond with anger. Defendant's prior convictions did not change her opinion of him.

Darren Brenegan, defendant's cousin, testified that he had grown up with defendant. Brenegan claimed that defendant's father was a "mean drunk" and that defendant "need[ed] help." Brenegan had never seen defendant violent but was aware of his prior convictions. Brenegan believed that defendant had to have been provoked in the current incident. Defendant had told his version of the incident to Brenegan when he visited defendant in jail. Brenegan had told a defense investigator that defendant was a different person when he used drugs and alcohol which he used to suppress what happened to him in his childhood.

People v. Leonard, No. C074430, 2014 WL 5396205, at *1-2 (Cal. Ct. App. Oct. 24, 2014).

////

////

3

IV.  Standards for a Writ of Habeas Corpus

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States.  28 U.S.C. § 2254(a).  A federal writ is not available for alleged error in the interpretation or application of state law.  See Wilson v. Corcoran, 562 U.S. 1, 4 (2010); Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).

Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal habeas corpus relief:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

For purposes of applying § 2254(d)(1), "clearly established federal law" consists of holdings of the United States Supreme Court at the time of the last reasoned state court decision. Thompson v. Runnels, 705 F.3d 1089, 1096 (9th Cir. 2013) (citing Greene v. Fisher, 132 S. Ct. 38 (2011); Stanley v. Cullen, 633 F.3d 852, 859 (9th Cir. 2011) (citing Williams v. Taylor, 529 U.S. 362, 405-06 (2000)).  Circuit court precedent "may be persuasive in determining what law is clearly established and whether a state court applied that law unreasonably."  Stanley, 633 F.3d at 859 (quoting Maxwell v. Roe, 606 F.3d 561, 567 (9th Cir. 2010)).  However, circuit precedent may not be "used to refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that th[e] [Supreme] Court has not announced."  Marshall v. Rodgers, 133 S. Ct. 1446, 1450 (2013) (citing Parker v. Matthews, 132 S. Ct. 2148, 2155 (2012) (per curiam)).  Nor may it be used to "determine whether a particular rule of law is so widely accepted among the Federal Circuits that it would, if presented to th[e] [Supreme] Court, be accepted as correct.

Id. Further, where courts of appeals have diverged in their treatment of an issue, it cannot be said that there is "clearly established Federal law" governing that issue. Carey v. Musladin, 549 U.S. 70, 77 (2006).

A state court decision is "contrary to" clearly established federal law if it applies a rule contradicting a holding of the Supreme Court or reaches a result different from Supreme Court precedent on "materially indistinguishable" facts. Price v. Vincent, 538 U.S. 634, 640 (2003). Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case. [1] Lockyer v. Andrade, 538 U.S. 63, 75 (2003); Williams v. Taylor, 529 U.S. at 413; Chia v. Cambra, 360 F.3d 997, 1002 (9th Cir. 2004). In this regard, a federal habeas court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Williams v. Taylor, 529 U.S. at 412. See also Schriro v. Landrigan, 550 U.S. 465, 473 (2007); Lockyer, 538 U.S. at 75 (it is "not enough that a federal habeas court, in its independent review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.'"). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). Accordingly, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Richter, 562 U.S. at 103.

////

---

[1] Under § 2254(d)(2), a state court decision based on a factual determination is not to be overturned on factual grounds unless it is "objectively unreasonable in light of the evidence presented in the state court proceeding." Stanley, 633 F.3d at 859 (quoting Davis v. Woodford, 384 F.3d 628, 638 (9th Cir. 2004)).

If the state court's decision does not meet the criteria set forth in § 2254(d), a reviewing court must conduct a de novo review of a habeas petitioner's claims. Delgadillo v. Woodford, 527 F.3d 919, 925 (9th Cir. 2008); see also Frantz v. Hazey, 533 F.3d 724, 735 (9th Cir. 2008) (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of § 2254(d)(1) error and that, if there is such error, we must decide the habeas petition by considering de novo the constitutional issues raised.").

The court looks to the last reasoned state court decision as the basis for the state court judgment. Stanley, 633 F.3d at 859; Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004). If the last reasoned state court decision adopts or substantially incorporates the reasoning from a previous state court decision, this court may consider both decisions to ascertain the reasoning of the last decision. Edwards v. Lamarque, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc). "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Richter, 562 U.S. at 99. This presumption may be overcome by a showing "there is reason to think some other explanation for the state court's decision is more likely." Id. at 785 (citing Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991)). Similarly, when a state court decision on a petitioner's claims rejects some claims but does not expressly address a federal claim, a federal habeas court must presume, subject to rebuttal, that the federal claim was adjudicated on the merits. Johnson v. Williams, 133 S. Ct. 1088, 1091 (2013).

Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under § 2254(d). Stanley, 633 F.3d at 860; Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003). "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." Himes, 336 F.3d at 853. Where no reasoned decision is available, the habeas petitioner still has the burden of "showing there was no reasonable basis for the state court to deny relief." Richter, 562 U.S. at 98.

A summary denial is presumed to be a denial on the merits of the petitioner's claims. Stancle v. Clay, 692 F.3d 948, 957 & n.3 (9th Cir. 2012). While the federal court cannot analyze just what the state court did when it issued a summary denial, the federal court must review the state court record to determine whether there was any "reasonable basis for the state court to deny relief." Richter, 562 U.S. at 98. This court "must determine what arguments or theories . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." Id. at 101. The petitioner bears "the burden to demonstrate that 'there was no reasonable basis for the state court to deny relief.'" Walker v. Martel, 709 F.3d 925, 939 (9th Cir. 2013) (quoting Richter, 562 U.S. at 98).

When it is clear, however, that a state court has not reached the merits of a petitioner's claim, the deferential standard set forth in 28 U.S.C. § 2254(d) does not apply and a federal habeas court must review the claim de novo. Stanley, 633 F.3d at 860; Reynoso v. Giurbino, 462 F.3d 1099, 1109 (9th Cir. 2006).

V. Petitioner's Claims

A. Prior Convictions Admitted for Impeachment

On direct appeal and in the amended petition, petitioner argued that the trial court abused its discretion and violated his right to due process and a fair trial by allowing his impeachment with six prior felony and six prior misdemeanor convictions, and the misdemeanor convictions were inadmissible hearsay. In addition, on direct appeal, petitioner contended that the two 1995 convictions for robbery and obstructing a peace officer with force or violence should have been excluded or sanitized because they were remote in time, not helpful in evaluating petitioner's honesty or integrity, and "went directly to [petitioner's] willingness to use force or violence, a primary element" of the underlying criminal charges. (Resp.'s Lodged Document ("LD") 1 at 9-14.) Petitioner also argued that defense counsel's failure to object to the admission of these prior convictions, and to object to the admission of the misdemeanor convictions as inadmissible hearsay constituted ineffective assistance of counsel in violation of the Sixth Amendment. (ECF No. 21 at 4; LD 1 at 14-16.)

Respondent counters that petitioner forfeited his claim that the trial court abused its discretion by allowing his impeachment with these prior convictions because defense counsel failed to object at trial, and thus the claim is procedurally barred under California's contemporaneous objection requirement, which is independent of federal law and consistently applied. (ECF No. 25 at 16-17.) Moreover, because the state court ruled that the felony convictions were properly admitted under state law, defense counsel was not ineffective for failing to object, and such ruling was not an unreasonable application of <u>Strickland v. Washington</u>, 466 U.S. 668 (1984). Further, respondent argues that the state court reasonably found that petitioner failed to demonstrate prejudice based on the admission of the prior felony convictions because the trial court instructed the jury that the prior convictions could only be used in assessing petitioner's credibility, and juries are presumed to follow instructions. (ECF No. 25 at 19.) As to the wrongful admission of the misdemeanor convictions, respondent argues that the state court properly found "it was a reasonable tactical decision for defense counsel not to object to avoid having more damaging underlying misdemeanor conduct admitted." (ECF No. 25 at 19.) Respondent contends that the state court properly found no prejudice under <u>Strickland</u>, because the admission of the misdemeanor convictions evidence was "merely cumulative to the properly admitted prior felony convictions." (ECF No. 25 at 20, citing LD 4 at 10.) Because the state court properly applied <u>Strickland</u>, respondent argues that petitioner's ineffective assistance of counsel claims are meritless.

       1. <u>State Court Decision</u>

The last reasoned rejection of petitioner's first claim is the decision of the California Court of Appeal for the Third Appellate District on petitioner's direct appeal. The state court addressed this claim as follows:

***Background***

Prior to defendant testifying at the first trial, the prosecutor sought to impeach defendant with the following five prior felony convictions: robbery (1995); obstructing an executive officer with force or violence (1995); false impersonation (2001); second degree burglary (2004); and vehicle theft (2008). The prosecutor detailed defendant's criminal history which included additional misdemeanor convictions, time spent in custody, and violations of

probation and parole, reflecting repeated unlawful conduct since defendant's first conviction in 1995. The court ruled the felony prior convictions were admissible to impeach defendant should he testify, commenting that defendant had not lived a "blameless life" and noting defendant's "consistent contact" with "the criminal justice system" since 1995. The trial court found the felony convictions were crimes of moral turpitude and extremely probative and relevant if defendant testified.

The prosecutor also proposed questioning defendant about his prior misdemeanor conduct in resisting a peace officer. The court queried whether the offense was a crime of moral turpitude. The prosecutor decided not to pursue it.

The first trial ended prior to the defense case. The trial court granted defendant's mistrial motion after several jurors were excused and there were not enough alternates.

At the beginning of the second trial, the court stated that its prior rulings stood which included allowing impeachment of the victim and defendant. [FN3] Defendant could be impeached with his five prior felony convictions. On direct examination, defense counsel did not ask defendant about his prior felony convictions. Outside the presence of the jury and prior to cross-examining defendant, the prosecutor (who was a different one than at the first trial) sought to impeach defendant further with his prior misdemeanor convictions: petty theft (1987, 1988); petty theft with a prior (1987); false information to a peace officer (2002, 2007); resisting a peace officer (2011); and domestic violence (battery) (2012).

> [FN 3: At the first trial, the victim was asked about his prior misdemeanor and felony convictions pursuant to a stipulation between the parties. At the beginning of the second trial with a different prosecutor, the stipulation "fell apart." The trial court ruled the misdemeanor and felony convictions were admissible for impeachment of the victim. When the victim testified at the second trial, the prosecutor asked and the victim confirmed that he had been convicted of sexual battery, a misdemeanor (1990), contributing to the delinquency of a minor, a misdemeanor (three times in 1990), driving under the influence, a felony (1991, 2000, 2003, & again in 2010), and being a convicted felon in possession of a firearm, a felony (1996). The victim stated that he was not proud of any of his convictions.]

Having reviewed defendant's record, defense counsel objected to defendant's impeachment with the resisting offense as more prejudicial (Evid. Code, § 352) since defendant was on trial for the same offense. The court excluded the prior misdemeanor conviction for resisting but ruled all the other misdemeanor convictions were admissible. Defense counsel was allowed to reopen and asked defendant about his prior felony convictions which defendant admitted. Defense counsel did not ask defendant about his misdemeanor conduct.

On cross-examination of defendant, the prosecutor also asked about the five prior felony convictions, as well as the misdemeanor convictions *except* the prior misdemeanor resisting. Defendant admitted the prior misdemeanor convictions and agreed that the petty theft with a prior was probably a felony conviction. The prosecutor did not ask defendant about the underlying facts of the misdemeanor offenses -- he simply asked defendant whether he had been convicted of each offense, as he had asked about the felony convictions. Defense counsel did not object to the prosecutor's questions about misdemeanor convictions rather than the misdemeanor conduct underlying those convictions.

### *Analysis*

Since defendant did not object below as now claimed on appeal, we consider defendant's claims as a challenge to defense counsel's performance. To establish ineffective assistance of counsel, a defendant must demonstrate that counsel's performance was deficient and that defendant suffered prejudice as a result. (*Strickland v. Washington* (1984) 466 U.S. 668, 687-689, 691-695 [80 L.Ed.2d 674, 693-694, 696-698] (*Strickland* ); *v. Ledesma* (1987) 43 Cal.3d 171, 216-218 (*Ledesma*).) To demonstrate deficient performance, the defendant "must affirmatively show counsel's deficiency involved a crucial issue and cannot be explained on the basis of any knowledgeable choice of tactics." (*People v. Montoya* (2007) 149 Cal.App.4th 1139, 1147.) To demonstrate prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (*Strickland*, at p. 694; see also *Ledesma*, at pp. 217-218.) If defendant fails to show the challenged actions affected the reliability of the trial process, we may reject a claim of ineffective assistance of counsel without deciding whether counsel's performance was deficient. (*Strickland*, at p. 697; *People v. Kipp* (1998) 18 Cal.4th 349, 366.) We conclude defendant has failed to show deficient performance and/or prejudice.

Subject to the court's discretion (Evid. Code, § 352), "any felony conviction which necessarily involves moral turpitude [may be used for impeachment], even if the immoral trait is one other than dishonesty." (*People v. Castro* (1985) 38 Cal.3d 301, 306 (*Castro*); *People v. Clark* (2011) 52 Cal.4th 856, 931 (*Clark*).) A prior felony conviction is "admissible for impeachment if the least adjudicated elements of the conviction necessarily involve moral turpitude." (*Castro*, at p. 317.) "Moral turpitude" has been defined as a "'readiness to do evil,'" and "moral depravity" (*id.* at pp. 314-315) and "'includes conduct involving violence, menace, or threat.'" (*People v. Williams* (1999) 72 Cal.App.4th 1460, 1464 (*Williams* ).) A felony conviction showing a general readiness to do evil supports an inference of a readiness to lie. (*Castro*, at p. 314.) "[I]t is undeniable that a witness' moral depravity of any kind has some 'tendency in reason' (Evid. Code, § 210) to shake one's confidence in his honesty." (*Id.* at p. 315.)

////

The trial court's exercise of discretion will not be disturbed on appeal unless the court exceeded the bounds of reason and the resulting harm constitutes a miscarriage of justice. (*People v. Green* (1995) 34 Cal.App.4th 165, 182-183 (*Green*).) In exercising its discretion, a trial court "should consider, among other factors, whether [the conviction] reflects on the witness's honesty or veracity, whether it is near or remote in time, whether it is for the same or similar conduct as the charged offense, and what effect its admission would have on the defendant's decision to testify." (*Clark, supra*, 52 Cal.4th at p. 931.)

Prejudice may be alleviated by "sanitiz[ing]" the prior felony conviction; the jury is told about the fact of, but not the nature of, the prior conviction. (*People v. Sandoval* (1992) 4 Cal.4th 155, 178.) Sanitizing a prior conviction renders prejudice less likely, "notwithstanding the possibility of jury speculation." (*People v. Massey* (1987) 192 Cal.App.3d 819, 825.)

Although the identity of the prior convictions to the current charges is to be considered by the trial court, such identity does not preclude use of those priors because "[n]o witness including a defendant who elects to testify in his own behalf is entitled to a false aura of veracity. The general rule is that felony convictions bearing on veracity are admissible." (*People v. Beagle* (1972) 6 Cal.3d 441, 453.) The trial court has discretion to allow use of prior convictions identical to the current charges when other factors weigh in favor of admission. (*Green, supra*, 34 Cal.App.4th at p. 183; *People v. Muldrow* (1988) 202 Cal.App.3d 636, 646–647 (*Muldrow*).)

"There is no automatic limitation on the number of priors admissible for impeachment" and whether more than one should be admitted is just one factor the trial court considers in weighing prejudice. (*People v. Dillingham* (1986) 186 Cal.App.3d 688, 695.)

Here, defendant claims defense counsel should have objected to the admission of five prior felony convictions and especially his prior robbery and obstructing offenses which involved violence. A prior robbery conviction is probative of a defendant's veracity. (*Clark, supra*, 52 Cal.4th at p. 932.) Obstructing an officer in violation of section 69 is a crime of moral turpitude since it involves force, menace, or threats. (*Williams, supra*, 72 Cal.App.4th at p. 1464.) As the trial court stated, defendant has not led a legally blameless life since committing the 1995 offenses; thus, his prior convictions were not so remote as to preclude their relevance for impeachment. (*People v. Carpenter* (1999) 21 Cal.4th 1016, 1055-1056 (*Carpenter* ) [17-year-old conviction not too remote]; *Green, supra*, 34 Cal.App.4th at p. 183 [20-year-old conviction not too remote]; *Muldrow, supra*, 202 Cal.App.3d at pp. 647-648 [20-year-old conviction not too remote].) That defendant had five prior felony convictions was just one factor for the trial court to consider. (See *People v. Mendoza* (2000) 78 Cal.App.4th 918, 927 [10 priors admitted for impeachment].) Defendant testified knowing that he would be impeached with his convictions. This further supports the trial court's decision to admit the evidence. (*Carpenter, supra*, 21

Cal. 4th at p. 1056; People v. Clarida (1987) 197 Cal.App.3d 547, 554.)

Since the 1995 felony convictions reflected adversely on defendant's veracity, defendant had not led a blameless life since, and the admission of the five prior felony convictions was not a deterrence to defendant testifying, we conclude that counsel's performance was not deficient in failing to object as now claimed on appeal and the trial court did not abuse its discretion in permitting defendant's credibility to be impeached with his felony convictions. Even assuming defense counsel should have requested that the court sanitize the 1995 offenses, defendant has failed to show prejudice. (*Strickland, supra*, 466 U.S. at p. 694; *Ledesma, supra*, 43 Cal.3d at pp. 217-218.) The court instructed the jury that defendant's prior convictions could be used only in assessing his credibility. It is not reasonably probable that the verdict would have been different had the now-challenged prior convictions been "sanitized" to delete any reference to the nature of the offenses. (*People v. Clark* (1996) 45 Cal.App.4th 1147, 1158.)

Defendant claims counsel rendered ineffective assistance in failing to object to the admission of defendant's misdemeanor convictions. *People v. Wheeler* (1992) 4 Cal.4th 284 held that a misdemeanor conviction itself when offered for impeachment is hearsay not within any exception (*id.* at pp. 297-300) but past misdemeanor conduct showing moral turpitude may be admissible. (*Id.* at pp. 290-295.) *Wheeler* explained, "Our holding is a narrow one, confined to the specific issue whether under current law a misdemeanor conviction is admissible as direct evidence of criminal conduct. Nothing in the hearsay rule precludes proof of impeaching misdemeanor misconduct by other, more direct means, including a witness's admission on direct or cross-examination that he or she committed such conduct." (*Id.* at p. 300, fn. 14, italics omitted.)

Evidence Code section 452.5 created the hearsay exception which allows a trial court to take judicial notice of certain records. (*People v. Duran* (2002) 97 Cal.App.4th 1448, 1460.) Here, however, the prosecutor did not use records of defendant's misdemeanor convictions. The *Wheeler* exception for admission of misdemeanor conduct on cross-examination does not apply because defendant admitted only his convictions and was not asked about the underlying conduct. This was improper impeachment under *Wheeler* because it did not go to the conduct underlying the conviction.

Defense counsel reasonably made a tactical decision not to object to the misdemeanor convictions (other than the misdemeanor resisting offense as similar to one of the current charges) in order to avoid more damaging information being elicited about the misdemeanor conduct. [FN4] Even had defense counsel objected to the domestic violence misdemeanor conduct, it to showed moral depravity and was admissible.

[FN4: In his reply brief, defendant misrepresents that the resisting misdemeanor was not excluded. He is wrong. Defense counsel objected to the resisting misdemeanor, the trial court excluded it, and the prosecutor did not ask defendant about it. The prosecutor did ask about defendant's felony conviction for "resisting a peace officer [obstructing an executive officer] with force."]

Even assuming counsel's performance was deficient in failing to object, any error in the admission of defendant's prior misdemeanor convictions for impeachment was harmless because such evidence was merely cumulative to the properly admitted prior felony convictions. It is not reasonably probable that defendant would have obtained a more favorable result had his prior misdemeanor convictions been excluded from evidence. (*Strickland, supra,* 466 U.S. at p. 694; *Ledesma, supra,* 43 Cal.3d at pp. 217-218.) Based on the foregoing discussion, we find no due process or fair trial rights violation.

People v. Leonard, No. C074430, 2014 WL 5396205, at *2-5 (Cal. Ct. App. Oct. 24, 2014)

2. Procedural Default

As set forth above, the California Court of Appeal ruled, in part, that petitioner forfeited his challenges to the admission of the prior convictions for impeachment purposes because his trial counsel failed to make a contemporaneous objection to that argument. Respondent argues the state court's finding of waiver based on the lack of a contemporaneous objection constitutes a state procedural bar precluding this court from addressing the merits of petitioner's claim of ineffective assistance of counsel.

State courts may decline to review a claim based on a procedural default. Wainwright v. Sykes, 433 U.S. 72 (1977). As a general rule, a federal habeas court "'will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment.'" Calderon v. United States District Court (Bean), 96 F.3d 1126, 1129 (9th Cir. 1996) (quoting Coleman v. Thompson, 501 U.S. 722, 729 (1991)). The state rule is only "adequate" if it is "firmly established and regularly followed." Id. (quoting Ford v. Georgia, 498 U.S. 411, 424 (1991)); Bennett v. Mueller, 322 F 3d 573, 583 (9th Cir. 2003) ("[t]o be deemed adequate, the state law ground for decision must be well-established and consistently applied.") The state rule must also be "independent" in that it is not "interwoven with the federal law." Park v. California, 202 F.3d

13

1146, 1152 (9th Cir. 2000) (quoting Michigan v. Long, 463 U.S. 1032, 1040-41 (1983)).  Even if the state rule is independent and adequate, the claims may be heard if the petitioner can show:  (1) cause for the default and actual prejudice as a result of the alleged violation of federal law; or (2) that failure to consider the claims will result in a fundamental miscarriage of justice.  Coleman, 501 U.S. at 749-50.

Respondent has met his burden of adequately pleading an independent and adequate state procedural ground as an affirmative defense.  See Bennett, 322 F.3d at 586.  Although the state appellate court addressed petitioner's ineffective assistance of counsel claims on the merits, it also expressly held that the claims were waived on appeal because of defense counsel's failure to object.  Petitioner has failed to meet his burden of asserting specific factual allegations that demonstrate the inadequacy of California's contemporaneous-objection rule as unclear, inconsistently applied or not well-established, either as a general rule or as applied to him.  Bennett, 322 F.3d at 586; Melendez v. Pliler, 288 F.3d 1120, 1124-26 (9th Cir. 2002).  There is no dispute that petitioner's trial counsel failed to object to the admission of all of the prior convictions at the time the trial court made its ruling.  Petitioner's claim of ineffective assistance of counsel therefore appears to be procedurally barred.  See Coleman, 501 U.S. at 747; Harris v. Reed, 489 U.S. 255, 264 n.10 (1989); Paulino v. Castro, 371 F.3d 1083, 1092-93 (9th Cir. 2004).  However, assuming arguendo that petitioner's first claim is not barred, it fails on its merits, as discussed below.

### 3.  Due Process Violation

#### a.  Standards

State court evidentiary rulings cannot serve as a basis for habeas relief unless the asserted error rises to the level of a federal constitutional violation.  See Estelle, 502 U.S. at 67-68. "The admission of evidence does not provide a basis for habeas relief unless it rendered the trial fundamentally unfair in violation of due process."  Holley v. Yarborough, 568 F.3d 1091, 1101 (9th Cir. 2009) (internal quotation marks and citation omitted).  The Supreme Court has explained that the Constitution "protects a defendant against a conviction based on evidence of questionable reliability, not by prohibiting introduction of the evidence, but by affording the defendant means

1  to persuade the jury that the evidence should be discounted as unworthy of credit." Perry v. New

2  Hampshire, 132 S. Ct. 716, 723 (2012). "Only when evidence is so extremely unfair that its

3  admission violates fundamental conceptions of justice" has the Supreme Court "imposed a

4  constraint tied to the Due Process Clause." Id. (internal quotation marks and citation omitted).

5         A habeas petitioner "bears a heavy burden in showing a due process violation based on an

6  evidentiary decision." Boyde v. Brown, 404 F.3d 1159, 1172 (9th Cir. 2005). Evidence

7  introduced by the prosecution will often raise more than one inference, some permissible and

8  some not, and it is up to the jury to sort them out in light of the trial court's instructions. Id.;

9  Jammal v. Van de Kamp, 926 F.2d 918, 920 (9th Cir. 1991). "Only if there are no permissible

10  inferences the jury may draw from the evidence can its admission violate due process. Even then,

11  the evidence must be of such quality as necessarily prevents a fair trial." Id. (internal quotation

12  marks and citation omitted).

13         The Antiterrorism and Effective Death Penalty Act ("AEDPA") further restricts the

14  federal habeas review available for evidentiary claims. The Ninth Circuit has explained that,

15  "[u]nder AEDPA, even clearly erroneous admissions of evidence that render a trial fundamentally

16  unfair may not permit the grant of federal habeas corpus relief if not forbidden by 'clearly

17  established federal law,' as laid out by the Supreme Court." Holley, 568 F.3d at 1101. "The

18  Supreme Court has made very few rulings regarding the admission of evidence as a violation of

19  due process" and "has not yet made a clear ruling that admission of irrelevant or overtly

20  prejudicial evidence constitutes a due process violation sufficient to warrant issuance of the writ."

21  Id.

22                              b. Prior Convictions

23         The state court adjudicated all of petitioner's claims challenging the admission of his prior

24  convictions under California state law and the California Evidence Code. Thus, to the extent

25  petitioner contends that the trial court should have excluded all or some of his prior convictions,

26  or sanitized his 1995 felony convictions as a matter of state evidentiary law, such claim is not

27  cognizable on federal habeas review. See Larson v. Palmateer, 515 F.3d 1057, 1066 (9th Cir.

28  2008) (whether evidentiary ruling is correct under state law is "irrelevant" on federal habeas

review), <u>cert. denied</u>, 555 U.S. 871 (2008); <u>see also</u> <u>Estelle</u>, 502 U.S. at 68, 75 n.5.  A state

court's decision adjudicating an issue cannot be contrary to, or an unreasonable application of,

Supreme Court precedent if the Supreme Court has not decided the issue.  <u>See</u> <u>Wright v. Van</u>

<u>Patten</u>, 552 U.S. 120, 125-26 (2008) (because Supreme Court cases gave "no clear answer to the

question presented," the Court could not say that the state court unreasonably applied clearly

established federal law."); <u>Carey</u>, 549 U.S. at 77.  Moreover, the jury was instructed to consider

witnesses' prior convictions purely to assess the truthfulness of their testimony, and not as

evidence of guilt.[2]  (Reporter's Transcript ("RT") 241, 243[3].)  A jury is presumed to follow its

instructions.  <u>See</u> <u>Weeks v. Angelone</u>, 528 U.S. 225, 234 (2000); <u>Richardson v. Marsh</u>, 481 U.S.

200, 211 (1987).

     In any event, petitioner's claim fails under general due process principles.  Because

petitioner put his credibility at issue by choosing to testify, <u>see</u> <u>Boyde v. Brown</u>, 404 F.3d at

1174, there was a rational and constitutionally permissible inference to be drawn from the prior

conviction evidence, namely, that petitioner was not credible.  "[C]riminal defendants are not

---

[2]  To the extent petitioner argues that the prior conviction evidence constituted impermissible propensity evidence, for example, that his prior convictions were used to show he had a propensity to commit the charged crimes, petitioner is not entitled to habeas relief.  The prior convictions were not admitted for such purpose, but rather solely to impeach petitioner's testimony.  In addition, the trial court instructed the jury that it could only consider prior conviction evidence for the purpose of determining the believability of the witness, which the jury is presumed to follow.  But even assuming the prior convictions had been admitted as propensity evidence, there is no clearly established Supreme Court authority which prohibits the admission of evidence for such purpose.  <u>Estelle</u>, 502 U.S. at 75 n.5 (Supreme Court expressly declined to address whether the introduction of propensity evidence offends the Due Process Clause).  The Ninth Circuit has held that, because the Supreme Court has left this question open, a state court's decision to admit propensity evidence cannot violate clearly established federal law for purposes of Section 2254(d)(1).  <u>See</u> <u>Larson</u>, 515 F.3d at 1066; <u>Alberni v. McDaniel</u>, 458 F.3d 860, 863-66 (9th Cir. 2006).  This Ninth Circuit precedent "squarely forecloses" the argument that admission of propensity evidence violates clearly established due process rights.  <u>Mejia v. Garcia</u>, 534 F.3d 1036, 1046 (9th Cir. 2008).

[3]  Specifically, the jury was instructed that "[t]he fact that a witness has been convicted of a felony, if this is a fact, may be considered by you only for the purpose of determining the believability of that witness.  The fact of a conviction does not necessarily destroy or impair a witness's believability.  It is one of the circumstances that you may consider in weighing the testimony of that witness."  (RT 243.)

entitled to a false aura of veracity when they take the stand." <u>United States v. Portillo</u>, 633 F.2d

1313, 1322 (9th Cir. 1980). When an accused elects to testify, "his credibility may be impeached,

his testimony may be assailed, and is to be weighed as that of any other witness." <u>Id.</u> (quoting

<u>Reagan v. United States</u>, 157 U.S. 301, 305 (1895)). Due process was not violated merely

because the trial court permitted the nature of the prior conviction to be admitted. <u>See</u> <u>Smithson</u>

<u>v. Adams</u>, 396 Fed. Appx. 437, 439 (9th Cir. Sept. 23, 2010) (rejecting petitioner's claim that he

"was denied due process of law when the trial court denied his motion to sanitize the admission of

his prior burglary conviction," because the evidence was admitted to prove the prior felony

conviction element of a felon in-possession-of-a-firearm charge and the jury was instructed not to

consider it as evidence of guilt); <u>Price v. Dexter</u>, 2011 WL 5056814, at *4-*5 (C.D. Cal. Aug. 17,

2011) (failure to sanitize petitioner's voluntary manslaughter conviction for purposes of

impeachment did not violate due process). Moreover, the trial court took steps to minimize

prejudice by refusing to admit the more recent resisting arrest conviction under California Penal

Code § 148 that petitioner suffered in 2011. (RT 130.)[4] Sanitizing the 1995 felony convictions

would have given petitioner "a false aura of veracity." <u>Portillo</u>, 633 F.2d 131 at 1322. Given the

trial court's careful balancing of petitioner's interest in avoiding prejudice against the

prosecution's interest in impeaching his credibility, and the admonition it gave to the jury, the

trial court's failure to exclude all or some of petitioner's prior convictions, or to sanitize

petitioner's 1995 felony convictions, did not render petitioner's trial fundamentally unfair.

Finally, even assuming the trial court constitutionally erred in failing to exclude prior

convictions or to sanitize the 1995 felony convictions, all of which were admitted for

impeachment purposes, petitioner is not entitled to federal habeas relief because the admission of

such evidence did not have a substantial and injurious effect on the jury's verdict." <u>See</u>

<u>Plascencia v. Alameida</u>, 467 F.3d 1190, 1203 (9th Cir. 2006) (applying <u>Brecht v. Abrahamson</u>,

507 U.S. 619 (1993), harmless error analysis to claim that admission of evidence was improper).

---

[4] The trial court also found that petitioner's 2006 conviction for being under the influence of, and
in possession of, a controlled substance in violation of California Penal Code §§ 11550 & 11377,
were not crimes of moral turpitude, and refused to allow their admission.

17

The 1995 felony convictions were mentioned only briefly on reopened direct exam and cross-examination of petitioner. (RT 131-32; 136.) Indeed, reference to all the prior convictions was brief. (RT 131-33; 135-37.) In closing argument, the prosecutor did not mention the prior misdemeanor convictions. The prosecutor mentioned the commission of felonies generally, but reminded the jury that it was the jury's job "to decide the facts based only on the admitted evidence." (RT 263.) In discussing whether anyone had a motive to lie, the prosecutor asked the jury whether any witness had been convicted of a felony, and reminded them that both the victim and petitioner had. (RT 270.) In discussing the witnesses who testified on behalf of petitioner, the prosecutor remarked that the witnesses "acknowledge that [petitioner's] got this extensive criminal record, and to them, these are all aberrations, and they may be. Unfortunately, this is another apparent aberration if he is the person they believe him to be." (RT 273.) As described above, the evidence against petitioner was strong; the victim and two eyewitnesses testified that the punch was unprovoked. Further, any threat of improper prejudice flowing from the prior conviction evidence was mitigated by the trial court's instruction to the jury that such evidence was only to be considered in assessing the believability of the witness.

Thus, in light of the brief nature of the references to the 1995 felony convictions and the other prior convictions, the trial court's limiting instruction, and the weight of the other evidence establishing petitioner's guilt on the offenses of conviction, any error in the failure of the trial court to exclude prior convictions or sanitize the 1995 felony convictions, admitted solely for impeachment purposes, was harmless.

4. Ineffective Assistance of Counsel: Failure to Object

The applicable legal standards for a claim of ineffective assistance of counsel are set forth in Strickland, 466 U.S. at 687-88. To succeed on a Strickland claim, a defendant must show that (1) his counsel's performance was deficient and that (2) the "deficient performance prejudiced the defense." Id. at 687. Counsel is constitutionally deficient if his or her representation "fell below an objective standard of reasonableness" such that it was outside "the range of competence demanded of attorneys in criminal cases." Id. at 687-88 (internal quotation marks omitted).

////

"Counsel's errors must be 'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" <u>Richter</u>, 562 U.S. at 105 (quoting <u>Strickland</u>, 466 U.S. at 687).

A reviewing court is required to make every effort "to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." <u>Strickland</u>, 466 U.S. at 669. Reviewing courts must also "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." <u>Strickland</u>, 466 U.S. at 689. This presumption of reasonableness means that the court must "give the attorneys the benefit of the doubt," and must also "affirmatively entertain the range of possible reasons [defense] counsel may have had for proceeding as they did." <u>Cullen v. Pinholster</u>, 563 U.S. 170, 196 (2011) (internal quotation marks and alterations omitted).

Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Strickland</u>, 466 U.S. at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." <u>Id.</u> "The likelihood of a different result must be substantial, not just conceivable." <u>Richter</u>, 562 U.S. at 189. A reviewing court "need not first determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." <u>Strickland</u>, 466 U.S. at 697.

Here, petitioner cannot demonstrate prejudice based on defense counsel's failure to object to the admission of the prior convictions for impeachment purposes. Even if the 1995 felony convictions had been sanitized, the other prior felony convictions remained, and such prior felony convictions served to impeach petitioner's credibility. Thus, the outcome would not have changed had the 1995 felony convictions been sanitized. Moreover, as the state court found, the misdemeanor conviction evidence was simply cumulative of the felony conviction evidence,[5] and

---

[5] In addition, the state court properly found that it was likely defense counsel tactically chose not to object to the admission of the misdemeanor conviction evidence in order to avoid the more prejudicial admission of the underlying conduct evidence.

19

thus it is not reasonably probable that the outcome would have changed even absent the prior misdemeanor conviction evidence.

Also, as described above, the evidence against petitioner was strong. There were two eyewitnesses who testified that petitioner punched the victim without provocation. (RT 55-58; 79-80, 88.) John Wilhelm identified petitioner as the man who "sucker-punched" the victim, explaining that meant: "Just out of plain sight, hitting a person without no rhyme or reason." (RT 55.) Wade Horton also identified petitioner as the man who punched the victim without provocation. (RT 79-80, 88.) In addition, the victim testified he was standing at the intersection, waiting for the light to change, "when all of a sudden," he got hit. (RT 44.) Such strong evidence, taken into consideration with petitioner's flight from the scene, and the impeachment of petitioner's credibility by only sanitized prior felony convictions, the likelihood of a different result is not substantial.

For all of the above reasons, petitioner failed to demonstrate that the state court's rejection of this claim is contrary to, or an unreasonable application of, <u>Strickland</u>. Accordingly, this claim should be denied.

B. <u>Ineffective Assistance of Counsel - Cross Examination</u>

In his second ground, petitioner claims that defense counsel was ineffective because he failed to provide any evidence through cross-examination and expert witness testimony concerning the meaning and extent of the victim's impairment associated with his 0.18 blood alcohol level at the hospital. Petitioner appears to argue that because of the delay between the incident and the victim's test at the hospital, it is likely the victim's blood alcohol level would have been 0.22 at the time of the incident, constituting "substantial evidence" that would make it reasonably probable a different verdict would have been reached. (ECF No. 21 at 4.)

Respondent counters that petitioner fails to demonstrate how the state court's denial of this claim was objectively unreasonable in light of <u>Strickland</u>, or an unreasonable interpretation of the facts. Respondent contends that the state court reasonably determined that defense counsel's decision not to cross-examine the victim in depth as to his intoxication or to present expert testimony was a tactical decision. Such tactical decision was reasonable because evidence had

been presented suggesting the victim was highly intoxicated based on his .18 blood alcohol level, despite his testimony he had only drank four to five beers. In addition, further cross-examination or defense expert testimony as to the victim's vulnerability due to alcohol impairment would have undermined petitioner's claim of self-defense. For example, "[t]he court of appeal reasoned that if trial counsel established that the victim was so drunk as to be unable to walk or stand without assistance, petitioner's claim of self-defense 'would have been even more unlikely.'" (ECF No. 25 at 22.) In any event, respondent argues that petitioner could not demonstrate Strickland prejudice even with further cross-examination of the victim or testimony by a defense expert. (ECF No. 25 at 22.) Respondent supports the argument by citing the state court's conclusion that "in light of the victim's testimony that he 'did nothing to provoke the attack,' the testimony of two impartial witnesses that they saw petitioner 'sucker punch' the 'defenseless' victim, petitioner's flight after the attack, and petitioner's lack of credibility based on his prior felony convictions, petitioner's self-defense claim would have been rejected in any case." (ECF No. 25 at 22.)

The last reasoned rejection of petitioner's claim is the decision of the California Court of Appeal for the Third Appellate District on petitioner's direct appeal. The state court addressed this claim as follows:

> Defendant contends counsel rendered ineffective assistance in cross-examining the victim and in failing to present defense expert testimony on the meaning and extent of the victim's impairment. Defendant claims counsel did not adequately cross-examine the victim, having only asked about drinking the day of his court testimony which the victim denied and whether he recalled going to his knees after he was hit which the victim remembered. Defendant complains that counsel did not ask about the size, brand, and alcohol content of the beer the victim consumed, the time of day he had been drinking, or how fast he drank the beers, and did not explore the inconsistency between the number of beers the victim claimed he drank and his blood-alcohol content. Defendant also complains that counsel did not present evidence through an expert about the victim's impairment. Defendant speculates that the victim was a tolerant drinker and his blood-alcohol content at the scene was 0.24 percent.
>
> Although the victim claimed he had only four or five beers that day, his blood-alcohol content at the hospital was 0.18 percent. The jury knew all about the victim's prior DUI (driving under the influence) convictions. The evidence already suggested the victim was highly

intoxicated. Defense counsel made a rational tactical decision not to focus on the victim's vulnerability due to his impairment in order to present defendant's claim of self-defense (an action of a reasonable person in the same circumstances). Had it been established that the victim was falling down drunk and needed assistance to walk or stand up rather than a punch in the face, defendant's claim of self-defense would have been even more unlikely.

Even assuming counsel's performance was deficient in cross-examining the victim and in failing to introduce expert testimony, defendant cannot show prejudice. Defendant claimed self-defense but his defense would have been rejected and the outcome would have been the same even with the asserted cross-examination and expert testimony in view of the victim's testimony that he did nothing to provoke the attack, the testimony of two impartial eyewitnesses (John Wilhelm and Wade Horton) who described defendant's attack as a "sucker punch" to the victim who was defenseless, defendant's flight after the attack, and defendant's lack of credibility in view of all his prior felony convictions. (*Strickland, supra,* 466 U.S. at p. 694; *Ledesma, supra,* 43 Cal.3d at pp. 217-218.) We reject defendant's claim of ineffective assistance of counsel.

People v. Leonard, No. C074430, 2014 WL 5396205, at *5–6 (Cal. Ct. App. Oct. 24, 2014)

As set forth above, petitioner must meet both prongs of the Strickland standard, demonstrating that defense counsel's performance was deficient, and that the deficient performance prejudiced petitioner's defense. Id. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." Strickland, 466 U.S. at 697.

Here, the record supports the state court's finding that petitioner could not demonstrate prejudice under Strickland, because even if defense counsel had more vigorously cross-examined the victim about his alcohol-induced impairment and presented expert testimony about such impairment, the outcome would not have changed. The jury heard evidence that the victim had sustained prior drunk driving convictions, and despite his claim that he had only had four or five beers that day, his blood-alcohol level at the hospital was 0.18 percent. Further evidence of the victim's level of intoxication would not have supported petitioner's claim of self-defense. As the state court found, because the victim testified he did not provoke the attack, two impartial eyewitnesses testified that they saw petitioner "sucker punch" the "defenseless" victim, petitioner fled after the attack, and petitioner lacked credibility due to his prior felony convictions,

petitioner's self-defense claim would have been rejected even with a more vigorous attack on the victim's impairment at the time of the assault.

Petitioner failed to demonstrate that the state court's rejection of this claim is contrary to or an unreasonable application of <u>Strickland</u>. Accordingly, this claim should be denied.

VI. <u>Conclusion</u>

Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." If petitioner files objections, he shall also address whether a certificate of appealability should issue and, if so, why and as to which issues. A certificate of appealability may issue under 28 U.S.C. § 2253 "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(3). Any response to the objections shall be filed and served within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

Dated: July 6, 2017

_Kendall J. Newman_

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

leon2097.157

23